IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDWARD SARTORIS, | Civil No. 3:23-cv-640 |
| Plaintiff | (Judge Mariani) |
| v. | |
| PRIMECARE MEDICAL CEO THOMAS J. WEBER, et al., | |
| Defendants | |

## MEMORANDUM

Plaintiff Edward Sartoris ("Sartoris"), an inmate who was housed, at all relevant times, at the Monroe County Correctional Facility ("MCCF"), in Stroudsburg, Pennsylvania, initiated this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). The matter is proceeding via an amended complaint. (Doc. 24). Named as Defendants are Warden Garry Haidle, Deputy Warden Joseph McCoy, Sergeant Gregory Armond, and Monroe County (collectively, the "County Defendants"), and Thomas J. Weber, Chief Executive Officer of PrimeCare Medical, Inc. Presently before the Court is Defendant Weber's motion (Doc. 29) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Court will grant the motion.

I. **Allegations of the Amended Complaint**

Sartoris alleges that he was housed in a cell on A-Block at the MCCF and that there was mold in his cell. (Doc. 24 ¶¶ 11-12). He claims that he complained about the mold on

several occasions and filed grievances regarding the mold. (*Id.* ¶ 12, 14-16). Occasionally, a maintenance worker would come to his cell with a rag and spray bottle and instruct Sartoris to clean the mold. (*Id.* ¶ 13). Sartoris asserts that no personal protective equipment was provided to clean his cell. (*Id.*). He further asserts that maintenance workers refused to clean the mold. (*Id.* ¶ 14). Sartoris alleges that the exposure to mold caused numerous health risks, such as migraines and breathing disorders. (*Id.* ¶ 17). He reported these ailments on sick call. (*Id.*).

Sartoris also alleges that the water on A-Block was not potable, which caused inmates to suffer skin disorders. (*Id.* ¶ 18). He claims that medical personnel provided other inmates with soap, lotions, antibiotics, and a visit to a dermatologist to address the alleged skin disorders. (*Id.*). Sartoris alleges that there were several cases of Methicillin-resistant Staphylococcus aureus ("MRSA") at the prison and, when he left MCCF, he had a severe MRSA infection. (*Id.*).

## II. Legal Standard

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks

omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## III.   Discussion

Defendant Weber argues that the amended complaint must be dismissed because Sartoris failed to demonstrate that Weber violated his Eighth or First Amendment rights. (Docs. 29, 31). The Court will address each argument in turn.

### A.   Eighth Amendment Claim

Sartoris appears to assert individual-capacity and municipal-liability claims against Defendant Weber for denying Sartoris adequate medical care. (*See* Doc. 24 ¶¶ 4, 10). He also names Weber in his official capacity. (*Id.* ¶ 10).

#### 1.   *Individual-Capacity Claim*

To establish an Eighth Amendment claim arising from deprivation of medical care, a plaintiff "must show (i) a serious medical need, and (ii) acts or omissions by prison officials

4

that indicate deliberate indifference to that need." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)).  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).  Additionally, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment." *Id.* (citation omitted).

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Mere differences of opinion between the prison's medical staff and the inmate regarding diagnosis or treatment rendered does not support a constitutional violation. *See Farmer v. Carlson*, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988) (citing *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)); *see also McCracken v. Jones*, 562 F.2d 22, 24 (10th Cir. 1977); *Smart v. Villar*, 547 F.2d 112, 113 (10th Cir. 1976), *cert. denied*, 450 U.S. 1041 (1981).  Courts are "reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Palakovic v. Wetzel*, 854 F.3d 209, 228 (3d Cir. 2017) (quoting *United States ex rel. Walker v. Fayette County*, 599 F.2d

573, 575 (3d Cir. 1979)). Federal courts generally defer to prison medical staff with respect to diagnosing and treating prisoners, and "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment." *Id.* (quoting *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979)).

Sartoris asserts in conclusory fashion that employees of PrimeCare and Monroe County were deliberately indifferent to his medical needs because they failed to provide proper treatment. (*See* Doc. 24 ¶¶ 15, 17-18, 23-26). The amended complaint does not contain *any* allegations that Defendant Weber was personally involved in providing medical treatment. The only reference to Defendant Weber in the amended complaint is an allegation that he is "legally responsible for the operation of PrimeCare and for the health services provided to inmates across the Commonwealth." (Doc. 24 ¶ 4). Sartoris has not plausibly alleged that Defendant Weber was personally involved in the alleged constitutional deprivations, and that omission is fatal to any claim of deliberate indifference against Weber.

### 2. *Municipal Liability*

Sartoris is suing Defendant Weber in his official capacity as PrimeCare's Chief Executive Officer. Since claims against individuals in their official capacities are indistinguishable from claims against the government entity that employs them, this claim operates the same as if Sartoris was suing PrimeCare directly. *See Cuvo v. DeBiasi*, 169 F.

App'x 688, 693 (3d Cir. 2006) ("a lawsuit against public officers in their official capacities is functionally a suit against the public entity that employs them") (citing *McMillian v. Monroe County,* 520 U.S. 781 (1997)).

"Municipalities and other local government units [are] to be included among those persons to whom § 1983 applies." *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690 (1978). However, municipal liability cannot be predicated on a theory of respondeat superior or vicarious liability. *Monell,* 436 U.S. at 693-94. Rather, a municipality is liable under § 1983 only when a plaintiff can demonstrate that the municipality itself, through the implementation of a municipal policy or custom, causes a constitutional violation. *Id.* at 691-95.

Thus, a municipality may only be held liable under § 1983 when an alleged violation is attributable to the enforcement of a municipal policy, practice, or decision of a final municipal policymaker. *City of St. Louis v. Praprotnik,* 485 U.S. 112, 122-23 (1988). Liability will be imposed when the policy or custom itself violates the Constitution or when the policy or custom, while not unconstitutional itself, is the "moving force" behind the constitutional tort of one its employees. *Polk County v. Dodson,* 454 U.S. 312, 326 (1981).

Private corporations providing medical services on a contract basis with prisons are state actors under § 1983 and may be liable for constitutional violations under the same standards applicable to the municipality. *See, e.g., Natale,* 318 F.3d at 582. Thus, in order to state a claim against a private corporation providing medical services to inmates at a

prison, a plaintiff must allege a policy or custom that resulted in the alleged constitutional violation at issue. *Palakovic*, 854 F.3d at 232.

The only reference to Defendant Weber in the amended complaint is as follows: "Defendant Thomas J. Weber, Esquire, CEO of PrimeCare Medical, is in effect chief operating officer of PrimeCare Medical. PrimeCare Medical is the low bid contract holder to provide medical services throughout Pennsylvania. He is legally responsible for the operation of PrimeCare and for the health services provided to inmates across the Commonwealth." (Doc. 24 ¶ 4). Defendant Weber cannot be vicariously liable for the alleged unconstitutional conduct of PrimeCare staff. *See Monell*, 436 U.S. at 691-92. And, Sartoris has not identified any policies or customs attributable to PrimeCare that resulted in the alleged constitutional violation of deliberate indifference. *See Palakovic*, 854 F.3d at 232. The Court will grant Defendant Weber's motion to dismiss on this ground as well.

**B.     First Amendment Claim**

The First Amendment offers protection for a wide variety of expressive activities. *See* U.S. CONST. amend I. To establish a section 1983 retaliation claim, a plaintiff bears the burden of satisfying three (3) elements. First, a prisoner-plaintiff must prove that he was engaged in a constitutionally protected activity. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). Second, a prisoner-plaintiff must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." *Id.* (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied by showing adverse action "sufficient 'to deter

8

a person of ordinary firmness' from exercising his First Amendment rights." *Id.* (quoting *Suppon v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000)). Third, a prisoner-plaintiff must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." *Rauser*, 241 F.3d at 333-34 (quoting *Mount Health Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). The mere fact that an adverse action occurs after a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events.[1] *See Lape v. Pennsylvania*, 157 F. App'x. 491, 498 (3d Cir. 2005).

Once the plaintiff has made a prima facie case, the burden shifts to the defendants to prove by a preponderance of the evidence that they "would have made the same decision absent the protected conduct for reasons reasonably related to penological interest." *Carter v. McGrady*, 292 F.3d 152, 158 (3d. Cir. 2002) (internal quotation and citation omitted). When analyzing a retaliation claim, it must be recognized that the task of prison administrators and staff is difficult, and the decisions of prison officials require deference, particularly where prison security is concerned. *Rauser*, 241 F.3d at 334.

Sartoris generally alleges that his First Amendment rights were violated. Sartoris fails to allege how Defendant Weber can be held liable for a claim of retaliation. There are simply no factual allegations that Defendant Weber was personally involved in any alleged

---

[1] Only where the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, standing alone, support an inference of causation. *Krouse v. American Sterlizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997).

retaliatory act. Accordingly, Defendant Weber's motion to dismiss the First Amendment claim asserted against him will be granted.

## IV. Leave to Amend

When a complaint fails to present a prima facie case of liability, district courts must generally grant leave to amend before dismissing the complaint. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). Specifically, the Third Circuit Court of Appeals has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)). Since Sartoris' claims against Defendant Weber are factually and legally flawed and he has previously been granted leave to amend, allowing further leave to amend would be both futile and inequitable. *See Grayson*, 293 F.3d at 108; *see also Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (where inmate plaintiff "has already had two chances to tell his story...giving him further leave to amend would be futile.").

## V. Conclusion

The Court will grant Defendant Weber's motion (Doc. 29) to dismiss. A separate Order shall issue.

_____
Robert D. Mariani
United States District Judge

Dated: February _6_, 2024