IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD SARTORIS, | : | Civil No. 3:23-cv-640 |
| | : | |
| **Plaintiff** | : | **(Judge Mariani)** |
| | : | |
| v. | : | |
| | : | |
| **PRIMECARE MEDICAL CEO THOMAS J. WEBER**, *et al.*, | : | |
| | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Plaintiff Edward Sartoris ("Sartoris"), an inmate who was housed, at all relevant times, at the Monroe County Correctional Facility, in Stroudsburg, Pennsylvania ("MCCF"), initiated this civil rights action pursuant to 42 U.S.C. § 1983.[1] (Doc. 1). The action proceeds via an amended complaint. (Doc. 24). The remaining Defendants are Warden Garry Haidle, Deputy Warden Joseph McCoy, Sergeant Gregory Armond, Monroe County, (collectively, the "moving Defendants"), and John Doe individuals. Presently before the Court is the moving Defendants' motion (Doc. 73) for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, the Court will grant the moving Defendants' motion and enter judgment in their favor. The Court will also dismiss

---

[1] Sartoris is currently housed at the State Correctional Institution, Dallas, Pennsylvania. (Doc. 19).

the action against the John Doe individuals pursuant to Federal Rule of Civil Procedure

4(m).

## I.     Statement of Undisputed Facts[2]

On May 27, 2020, Sartoris was booked into the Monroe County Correctional Facility

after using a stun gun on his wife and stabbing her multiple times.  (Doc. 80 ¶ 1).  On

October 28, 2022, Sartoris pled guilty to a first-degree felony in the Monroe County Court of

Common Pleas.  (*Id.* ¶ 3).

Sartoris' allegations in his amended complaint relate to events that occurred at the

MCCF in July 2020, when he was a pretrial detainee.  (*Id.* ¶ 4).  Sartoris alleges that he was

housed in a cell on A-Block at the MCCF and that there was mold in his cell.  (Doc. 24 ¶¶

11-12).  He claims that he complained about the mold on several occasions and filed

grievances regarding the mold.  (*Id.* ¶ 12, 14-16).  Occasionally, a maintenance worker

---

[2]     Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried."  LOCAL RULE OF COURT 56.1.  A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried.  *Id.*  Unless otherwise noted, the factual background herein derives from the amended complaint and the moving Defendants' Rule 56.1 statement of material facts.  (Docs. 24, 80).  Although Sartoris filed several documents in response to the moving Defendants' motion for summary judgment, he failed to file a responsive statement of material facts.  Therefore, as authorized by Local Rule 56.1, the Court will admit as uncontroverted the statement of facts submitted by the moving Defendants.  *See* LOCAL RULE OF COURT 56.1 ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.");  *Rau v. Allstate Fire & Cas. Ins. Co.*, 793 F. App'x 84, 87 (3d Cir. 2019) (upholding this Court's decision to strike non-movant's non-responsive counterstatement of facts under Local Rule 56.1);  *Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613 (3d Cir. 2018) (finding that "the District Court is in the best position to determine the extent of a party's noncompliance with Local Rule 56.1, as well as the appropriate sanction for such noncompliance").

would come to his cell with a rag and spray bottle and instruct Sartoris to clean the mold. (*Id.* ¶ 13). Sartoris asserts that no personal protective equipment was provided to clean his cell. (*Id.*). He further asserts that maintenance workers refused to clean the mold. (*Id.* ¶ 14). Sartoris alleges that the exposure to mold caused numerous health risks, such as migraines and breathing disorders. (*Id.* ¶ 17). He reported these ailments on sick call. (*Id.*).

Sartoris also alleges that the water on A-Block was not potable, which caused inmates to suffer skin disorders. (*Id.* ¶ 18). He claims that medical personnel provided inmates with soap, lotions, antibiotics, and consultations with a dermatologist. (*Id.*). Sartoris alleges that there were several cases of Methicillin-resistant Staphylococcus aureus ("MRSA") at the prison and, when he left MCCF, he had a severe MRSA infection. (*Id.*).

In addition to the named Defendants, Sartoris also names an unidentified Safety Officer and an unidentified Maintenance Supervisor at MCCF. (Doc. 80 ¶ 5). On February 6, 2024, the Court ordered Sartoris to show cause within 15 days as to why the action against the Safety Officer and the Maintenance Supervisor should not be dismissed pursuant to Federal Rule of Civil Procedure 4(m) for failure to serve the summons and complaint within 90 days. (*Id.* ¶ 6). Sartoris did not respond to the Order and has never identified the John Doe individuals, nor has he filed any pleadings with the Court reflecting that he served these Defendants. (*Id.* ¶ 7). The moving Defendants thus contend that Sartoris has abandoned his claims against the John Doe individuals. (*Id.* ¶ 8).

The moving Defendants are as follows. Garry Haidle was the Warden of the MCCF during the events described in the complaint. (*Id.* ¶ 9). Joseph McCoy was the Deputy Warden of Security at the MCCF. (*Id.* ¶ 10). Gregory Armond was a Sergeant at the MCCF who supervised correctional officers in the units in which he was assigned. (*Id.* ¶ 11). Monroe County owns the building identified as the MCCF. (*Id.* ¶ 12). The correctional staff at the MCCF are employees of the County. (*Id.* ¶ 13). However, the medical staff are employed by PrimeCare Medical, Inc., which is under contract with Monroe County to provide health care services to inmates. (*Id.* ¶ 14).

In 2020, during the relevant time, the nation was in the middle of the COVID-19 epidemic. (*Id.* ¶ 15). During that time, correctional staff was asked to wear masks to prevent the transmission of the COVID-19 virus, and precautions were taken by the staff to clean the facility and wipe down surface areas to avoid the transmission of the virus. (*Id.* ¶ 16). Cleaning operations were performed daily throughout the facility. (*Id.* ¶ 17). However, Sartoris and other inmates were not given access to chemicals that could be harmful to them or to staff, or that required personal protective equipment to handle safely. (*Id.*). To protect the health of the inmates and the staff, the MCCF took various health precautions, including recommending masks for correctional staff and maintaining rigorous cleaning protocols to minimize virus transmission. (*Id.* ¶ 31). Defendants maintain that there were no issues with harmful environmental conditions like mold or asbestos, and all inmates,

4

including Sartoris, received safe, nutritionally balanced meals, drinkable water, and had access to commissary items. (Id. ¶¶ 18, 32).

There was no policy or practice of Monroe County to ignore environmental conditions that could harm inmates and staff. (Id. ¶ 19). The MCCF is inspected regularly by the Pennsylvania Department of Corrections ("DOC"), which never cited the MCCF for environmental hazards during Sartoris' incarceration. (Id.).

PrimeCare staff do not share the medical records of an inmate with the correctional staff due to confidentiality laws (i.e., HIPAA) unless there is a need to know, such as to warn officers of an inmate's suicidal ideation or when he needs special care due to a medical condition. (Id. ¶ 20). There is no record of PrimeCare staff informing the administration of an environmental risk at the MCCF that posed a danger to Sartoris or others. (Id. ¶ 21).

The MCCF has a grievance procedure that is set forth in the Inmate Handbook. (Id. ¶ 22). Defendants maintain that Sartoris was given a copy of the Inmate Handbook when he was first incarcerated at the MCCF. (Id. ¶ 23). The grievance procedure allows an inmate to make complaints about: (1) the conditions of his confinement; (2) complaints against specific officers relating to their treatment of him or about officers' misbehavior; (3) his dissatisfaction with his medical care; and (4) claims that officers subjected him to harm or failed to provide him with a proper level of medical care. (Id. ¶ 25).

The claims in Sartoris' amended complaint are claims that were covered by the MCCF grievance procedure. (Id. ¶ 26). The grievance procedure provides for several

levels of review if an inmate is dissatisfied with the response he receives from his

grievances. (*Id.* ¶ 27). Warden Haidle is the final level of review in the grievance process

and all grievances and decisions responding to grievances or grievance appeals are

memorialized in writing. (*Id.* ¶ 28). Defendants maintain that Sartoris did not exhaust his

administrative remedies concerning the environmental conditions at the MCCF, the alleged

failure to provide Sartoris with an appropriate level of medical care, the alleged malfeasance

of the Defendants, and any complaints relating to the policies of Monroe County. (*Id.* ¶ 29).

Defendants maintain further that if Sartoris had submitted grievances relating to the claims

in his amended complaint, they would have been investigated and addressed. (*Id.* ¶ 30).

II.    **Legal Standard**

Through summary adjudication, the court may dispose of those claims that do not

present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality,

. . . [o]nly disputes over facts that might affect the outcome of the suit under the governing

law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence

of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106

S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving

party must offer specific facts contradicting those averred by the movant to establish a

genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe

it, a court should not adopt that version of the facts for purposes of ruling on a
motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## III.  Discussion

### A.  Exhaustion of Administrative Review[3]

The Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e, *et seq.*,

requires prisoners to exhaust available administrative remedies before suing prison officials

for alleged constitutional violations.  *See id.* § 1997e(a); *Ross v. Blake*, 578 U.S. 632, 639,

642 (2016) (explaining that only "available" remedies must be exhausted).  Proper

exhaustion is mandatory, even if the inmate is seeking relief—like monetary damages—that

cannot be granted by the administrative system.  *See Woodford v. Ngo*, 548 U.S. 81, 85

(2006).  However, there are situations in which a grievance procedure may be rendered

"unavailable" to an inmate, such as when a prison official thwarts an inmate's ability to use

it, *Ross*, 578 U.S. at 643-44, when intimidation by means of "serious threats of retaliation

and bodily harm" prevent an inmate from filing, *Rinaldi v. United States*, 904 F.3d 257, 266-

67 (3d Cir. 2018), or when a prison has "rendered its administrative remedies unavailable...

when it failed to timely (by its own procedural rules) respond to [an inmate's] grievance and

then repeatedly ignored his follow-up requests for a decision on his claim," *Robinson v.*

---

[3]    On August 13, 2024, the Court issued an Order apprising the parties that it would consider
exhaustion in its role as factfinder in accordance with *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018)
and *Small v. Camden Cnty.*, 728 F.3d 265 (3d Cir. 2013), and afforded the parties the opportunity to
supplement the record with any additional evidence relevant to exhaustion of administrative remedies.
(Doc. 94).

*Superintendent Rockview SCI*, 831 F.3d 148, 154 (3d Cir. 2016); *see also Shifflett v. Korszniak*, 934 F.3d 356, 359 (3d Cir. 2019).

Under Third Circuit precedent, "exhaustion is a question of law to be determined by a judge, even if that determination requires the resolution of disputed facts." *Small v. Camden Cnty.*, 728 F.3d 265, 269 (3d Cir. 2013) (citing *Drippe v. Tobelinski*, 604 F.3d 778, 781 (3d Cir. 2010)); *see also Drippe*, 604 F.3d at 781 ("Juries decide cases, not issues of judicial traffic control. Until the issue of exhaustion is resolved, the court cannot know whether it is to decide the case or the prison authorities are to.") (quoting *Pavey v. Conley*, 544 F.3d 739, 741 (7th Cir. 2008)); *cf. Wilkerson v. United States*, No. 3:13-1499, 2014 WL 1653249, at *9 (M.D. Pa. Apr. 24, 2014) ("[I]f there is a dispute of material fact, the court should conduct a plenary trial on the contested facts prior to making [an exhaustion of administrative remedies] determination."). "Although the availability of administrative remedies to a prisoner is a question of law, it necessarily involves a factual inquiry." *Small*, 728 F.3d at 271 (citations omitted).

Here, Sartoris has presented no evidence that he properly exhausted his administrative remedies, that prison officials thwarted his attempt to comply with the prison grievance process, or that there was any confusion regarding the grievance procedure. First, Sartoris argues that he attempted to exhaust his administrative remedies, but the grievances "disappeared[,]" he did not receive a response, and when he did receive a response, prison officials advised that the matter was under review. (Doc. 84-2, p. 6).

Sartoris submitted initial inmate grievances, and states that the prison officials' responses were "disingenuous[,]" and it took several months to receive their responses. (Doc. 84-4 through Doc. 84-13). Sartoris has failed to submit any evidence that he appealed any of his grievances to the final level of review. Second, in his amended complaint, Sartoris alleges that he filed grievances related to his claims, but the grievances "seemed to be cursed." (Doc. 24, pp. 9-10). Sartoris' bald assertion that the grievance process was long or that grievances were unanswered, standing alone, does not carry his burden of proving "that there was some extraordinary reason he was prevented from complying with the statutory mandate." *Davis v. Warman*, 49 F. App'x 365, 368 (3d Cir. 2002). He does not provide any evidence to support a claim that the administrative remedy process was not available to him or that prison officials failed to respond to his grievance. In fact, he has submitted copies of his initial grievances with the prison officials' responses. Sartoris' only evidence of exhaustion confirms that he did not fully and properly exhaust his administrative remedies prior to filing this lawsuit. Moreover, although Sartoris was transferred from the MCCF to SCI-Dallas, a transfer from one facility to another does not excuse the PLRA's exhaustion requirement, and Sartoris does not advance any argument that administrative exhaustion was rendered futile after his transfer. *See Williamson v. Wexford Health Sources, Inc.*, 131 F. App'x 888, 890 (3d Cir 2005) (*per curiam*).

In contrast, the moving Defendants have presented evidence in the form of an affidavit from Warden Haidle confirming that he reviewed Sartoris' file, none of Sartoris'

grievances were submitted to the final level of review and, thus, Sartoris did not exhaust all of his available MCCF grievance remedies outlined in the Inmate Handbook. (Doc. 80-1, pp. 84-85 ¶¶ 2-8, Declaration of MCCF Warden Garry Haidle ("Haidle Decl.")). Allegations without the support of evidence are not sufficient to survive summary judgment. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288-89 (3d Cir. 2018). Sartoris' allegation that he filed initial grievances, without any evidence that he appealed them to the final level of review, is not sufficient to survive Defendants' motion.

It is undisputed that Sartoris failed to properly exhaust all levels of review provided by the MCCF inmate grievance system. Instead, Sartoris bypassed the inmate grievance system and proceeded to federal court. "[I]t is beyond the power of this court—or any other—to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000). Sartoris' course of action is precisely the conduct that the PLRA administrative exhaustion requirement seeks to curtail. The moving Defendants are entitled to summary judgment based on Sartoris' failure to exhaust administrative remedies.

Even had Sartoris properly exhausted, the moving Defendants would be entitled to summary judgment on the merits, as set forth below.

### B.    Conditions of Confinement Claim

Because Sartoris was a pretrial detainee at the relevant time, the Fourteenth Amendment governs his conditions of confinement claim. *Hubbard v. Taylor*, 399 F.3d 150,

166 (3d Cir. 2005). To establish a basis for a Fourteenth Amendment violation, a prisoner must allege that their conditions of confinement amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 538 (1979). "Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind." *Id.* (internal quotations and alterations omitted).

Only conditions of confinement that "cause [detainees] to endure genuine privations and hardship over an extended period of time" violate due process. *Bell*, 441 U.S. at 542. Additionally, "'a particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose.'" *Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012) (quoting *Stevenson*, 495 F.3d at 68); *see also Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017). Courts should consider the totality of the circumstances in evaluating such a claim. *Bistrian*, 696 F.3d at 373 ("In evaluating a pretrial detainee's claim of unconstitutional punishment, courts must examine the totality of the circumstances within the institution.").

To satisfy the subjective component of the analysis, a prisoner must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 298-99

(1991); *see also Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (*per curiam*) ("'[T]he

official must both be aware of facts from which the inference could be drawn that a

substantial harm exists, and he must also draw that inference.'") (quoting *Farmer v.*

*Brennan*, 511 U.S. 825, 837 (1994)); *cf. Edwards v. Northampton Cnty.*, 663 F. App'x 132,

135 (3d Cir. 2016) (*per curiam*) ("[W]e agree with the District Court and find no reason to

apply a different standard here as we have applied the 'deliberate indifference' standard

both in cases involving prisoners and pretrial detainees." (internal citations omitted)).

"The knowledge element of deliberate indifference is subjective, not objective

knowledge, meaning that the official must actually be aware of the existence of the

excessive risk; it is not sufficient that the official should have been aware." *Beers-Capitol v.*

*Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001). Knowledge may be shown where the official

has actual notice of the risk, *Nami v. Fauver*, 82 F.3d 63, 67-68 (3d Cir. 1996), or where the

risk was "longstanding, pervasive, well-documented, or expressly noted by prison officials in

the past, and the circumstances suggest that the defendant-official being sued had been

exposed to information concerning the risk and thus must have known about it." *Farmer*,

511 U.S. at 842.

The presence of toxic mold or asbestos in a prison may violate the Constitution if it

poses a substantial risk of serious harm. *See Fontroy v. Owens*, 150 F.3d 239, 244 (3d Cir.

1998) (considering deliberate indifference claim based on asbestos exposure in prison);

*Hall-Wadley v. Maintenance Department*, 386 F. Supp.3d 512, 518 (E.D. Pa. 2019)

(considering deliberate indifference claim based on mold exposure); *Johnson v. Beard*, No. 09-886, 2014 WL 4793905, at *6 (M.D. Pa. Sept. 25, 2014) ("Toxic mold which causes [an] inmate to suffer headaches, sinus problems, blurred vision, breathing difficulty, irritated eyes and fatigue can[ ] set forth a viable conditions of confinement claim.") (internal quotation marks and citation omitted); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (holding that inmates should not be "expose[d] to [contaminants] that pose an unreasonable risk of serious damage to his future health").

Here, Sartoris failed to submit evidence supporting his assertion that he was housed under conditions subjecting him to a substantial risk of harm from exposure to mold, asbestos, and contaminated water. During his incarceration at the MCCF, Sartoris complained that his exposure to these conditions caused breathing and lung issues, migraines, a sore throat, and skin infections.

First, there is no objective evidence of record that the MCCF failed to maintain sanitary conditions based on the presence of mold, asbestos, or contaminated water. Sartoris submitted declarations, under penalty of perjury, of other incarcerated individuals alleging similar facts about the presence of mold, asbestos, and contaminated water. (Docs. 84-1, 84-2; Doc. 88, p. 5). The Court may consider the statements of Sartoris' fellow inmates. By contrast, the moving Defendants show an absence of any inspection reports establishing the presence of mold, asbestos, or contaminated water at the MCCF. (*See* Doc. 80-1, Haidle Decl. at pp. 85-86 ¶¶ 9-11, 17). The record before the Court shows that

the DOC maintains a sanitation policy and regularly inspects the MCCF. (*See id.*, Haidle Decl. at p. 85 ¶ 9). During Sartoris' confinement at the MCCF, the facility passed all DOC inspections. (*See id.*, Haidle Decl. at p. 85 ¶ 10). Additionally, there is no record of the medical staff informing prison administration of an environmental risk at the MCCF that posed a danger to Sartoris. (*See id.*, Haidle Decl. at p. 86 ¶ 17). The record is devoid of any official documentation reporting the presence of any environmental hazards at the MCCF during Sartoris' incarceration. (*See id.*, Haidle Decl. at p. 85 ¶ 11).

In further support of his position, Sartoris relies on a "Public Notice" from the Department of Environmental Protection ("DEP") dated December 1, 2022. (Doc. 84-3, p. 1; Doc. 90-1, p. 45). Therein, DEP advised its clients, including the MCCF, that they failed to properly test for a contaminant in the water system. (*Id.*). DEP advised that the situation was not an emergency, the annual test was supposed to be conducted in September 2022, but instead was conducted in October 2022. (*Id.*). This Public Notice document only explains that DEP "failed to monitor" the facility's water, that corrective action was taken, and "[t]here is nothing you need to do at this time." (*Id.*). Sartoris' reliance on this document is misplaced, as it does not cite the MCCF for failure to maintain sanitary conditions. (*See id.*). Sartoris has not submitted any other reports or expert testimony regarding water quality, mold, or asbestos at the MCCF.

Second, if Sartoris were to have presented adequate evidence of the existence of mold, asbestos, and contaminated water at the MCCF, he does not offer any evidence that

there was a substantial risk of serious harm from such exposure. Sartoris complains about symptoms caused by his exposure to mold, asbestos, and unclean water. While Sartoris believes his ailments are attributable to the conditions at the MCCF (*see* Doc. 88), he has not submitted any medical records to the Court in support of this assertion. Nor does he come forward with any medical expert evidence which would establish that his ailments could have been caused by the conditions of his confinement, thus creating a substantial risk of serious harm. The Court notes that "the *mere presence* of mold does not indicate an objectively serious deprivation." *Johnson*, 2014 WL 4793905, at *6 (collecting cases) (emphasis added). Based upon an application of the above cited legal standards to the factual record, the Court finds that Sartoris has not presented evidence establishing a substantial risk of serious harm to him.

Further, assuming *arguendo* that a complained-of condition existed, Sartoris' claim would nonetheless fail because he does not establish that the moving Defendants acted with deliberate indifference. To prevail on a Fourteenth Amendment claim brought pursuant to § 1983, a pretrial detainee must also demonstrate that a particular defendant acted with "deliberate indifference" to those conditions. *Edwards*, 663 F. App'x at 135. Deliberate indifference is established if a defendant "knows that inmates face a substantial risk of serious harm" and "disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. Sartoris has not produced any evidence to show that the moving Defendants acted with deliberate indifference. The moving Defendants attest that the DOC

16

regularly inspected the prison, and it earned full compliance during the relevant time period. (*See* Doc. 80-1, Haidle Decl. at p. 85 ¶¶ 9-10).  The moving Defendants further attest that they took reasonable measures to keep the prison clean.  (*See* Doc. 80 ¶¶ 16-17; Doc. 80-1, Haidle Decl. at p. 85 ¶ 13).  They presented evidence regarding access of cleaning supplies to individuals incarcerated at the MCCF and attach the policy directing staff to ensure that mandatory cell cleaning is proper and thorough.  (Doc. 80-1, pp. 45-82).  The policy provides:

> [i]nmate beds are to be made and the cells straightened up, swept and mopped before unit activities begin.  The procedure for mopping cells shall be as follows: a. Each inmate is responsible for a daily mopping of their cell. b. Cell cleanup begins at 0600 and shall be completed in a timely manner at the direction of the Housing Unit Officer. c. Each housing unit is equipped with all the cleaning supplies for inmate cell/unit cleanup.

(*Id.* at 59-60).  The record shows that prison officials cleaned the facility on a daily basis, the DOC regularly inspected the facility and there were no findings of environmental hazards, water was tested monthly, windows were replaced as needed, and medical staff never informed the administration of an environmental risk at the MCCF.  (*See* Doc. 80 ¶ 17; Doc. 80-1, Haidle Decl. at pp. 85-86 ¶¶ 9-11, 13, 17; Docs. 84-4, 84-9).  Sartoris has not presented any evidence that, with deliberate indifference, the moving Defendants exposed him to mold, asbestos, and contaminated water, that caused him harm or posed an unreasonable risk of serious damage to his future health.

Finally, Sartoris failed to come forward with evidence creating a genuine dispute of fact as to the cause of the ailments he claims he suffered.  While toxic mold causing an

"inmate to suffer headaches, sinus problems, blurred vision, breathing difficulty, irritated eyes, and fatigue can set forth a viable conditions of confinement claim," *Johnson*, 2014 WL 4793905, at *6 (citation omitted), there is no evidence that Sartoris' alleged exposure to mold, asbestos, and contaminated water caused him harm. *See, e.g., Malles v. Lehigh Cnty.,* 639 F.Supp.2d 566, 581 (E.D. Pa. 2009) (no evidence prison officials' action or inaction proximately caused inmates injuries from MRSA). Sartoris has only submitted his personal belief that exposure to mold, asbestos, and unclean water caused his symptoms. Absent medical, scientific, or other evidence, the Court cannot infer that the conditions at the MCCF caused his symptoms or harm. Sartoris' comments are merely his conclusory opinion, and do not constitute evidence that the conditions at the MCCF fail to meet constitutional standards. *See, e.g., Ford v. Mercer Cnty. Correctional Center*, 171 F. App'x 416, 420 (3d Cir. 2006) (finding the plaintiff did not submit sufficient evidence that a jury could reasonably return a verdict in his favor that the air quality in the prison posed an unreasonable risk of harm to his health in violation of the Fourteenth Amendment).

The party adverse to summary judgment must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460 (3d Cir. 1989). Sartoris has failed to meet this burden. There is no evidence creating a genuine issue of material fact on the conditions of confinement claim. Viewing the facts and drawing all reasonable inferences in

the light most favorable to Sartoris, there are no facts in the record to make a sufficient

showing on the essential elements of his claim.  The Court will enter summary judgment in

favor of the moving Defendants on Plaintiff's conditions of confinement claim.[4]

## IV.    Federal Rule of Civil Procedure 4(m)

Rule 4(m) sets forth the following time frame a plaintiff has to serve a defendant with

the summons and copy of the complaint:

> If a defendant is not served within 90 days after the complaint is filed, the
> court -- on motion or on its own after notice to the plaintiff -- must dismiss the
> action without prejudice against that defendant or order that service be made
> within a specified time.  But if the plaintiff shows good cause for the failure,
> the court must extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m).  The John Doe Defendants were named in the amended complaint that

was filed on August 1, 2023, and, to date, have not been identified or served in this case.

The Court must engage in a two-step process in determining whether to dismiss the

unidentified, non-served Defendants or grant Sartoris additional time to effect service.

"First, the district court should determine whether good cause exists for an extension of

time.  If good cause is present, the district court must extend time for service and the inquiry

is ended.  If, however, good cause does not exist, the court may in its discretion decide

whether to dismiss the case without prejudice or extend time for service."  *Petrucelli v.*

*Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3d Cir. 1995).  Good cause requires good faith

---

[4]    Because the Court finds that summary judgment must be entered in favor of Defendants on the
conditions of confinement claim, the Court need not reach Defendants' remaining arguments regarding
qualified immunity and *Monell* liability.

on the part of the party seeking an enlargement and some reasonable basis for noncompliance with the time specified in the rules. *MCI Telecomm. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995). In determining whether good cause exists, a court's "primary focus is on the plaintiff's reasons for not complying with the time limit in the first place." *Id.* Although prejudice is a factor to be considered, the absence of prejudice to the opposing party alone does not constitute good cause to excuse late service. *Id.*

In the present matter, Sartoris failed to establish good cause. On February 6, 2024, the Court ordered Sartoris to provide additional information concerning the identity of the John Doe Defendants and warned him that failure to comply may result in the dismissal of his claims against those Defendants pursuant to Rule 4(m). (Doc. 58). Sartoris failed to do so, and his *pro se* status is not good cause to excuse his failure to timely identify or serve these Defendants. *Veal v. United States*, 84 F. App'x 253, 256 (3d Cir. 2004). Based upon the lack of *any* explanation for his failure to adhere to the requirements of Rule 4, the Court finds that Sartoris failed to establish good cause.

If a plaintiff cannot show good cause for his failure to serve the defendant within 90 days, a district court may either dismiss the defendant, or exercise its discretion to order that service be made within a specific time. *Petrucelli*, 46 F.3d at 1305; *see also* FED. R. CIV. P. 4(m). It is Sartoris' responsibility to properly identify all defendants, and provide accurate mailing addresses for the defendants, in a timely fashion. (*See* Doc. 8 ¶ 8; Doc. 25 ¶¶ 3-4) (advising Sartoris that failure to properly name a defendant, or provide an

accurate mailing address for a defendant, may result in dismissal of the claims against that defendant pursuant to Federal Rule of Civil Procedure 4(m)).

In light of Sartoris' lack of good faith effort to identify or serve the John Doe Defendants, despite this Court's warning of the possible consequences, including dismissal, the Court concludes that dismissal is appropriate under the present circumstances. Accordingly, the unidentified, non-served Defendants will be dismissed from this action.

## V.    Conclusion

Plaintiff's principal failure to create a genuine issue of material fact for trial lies in his failure to submit factual evidence of the presence of mold, asbestos, or contaminated drinking water and his concomitant failure to submit evidence creating an issue of fact as to the cause of the maladies he claims to have suffered which are, likewise, unsupported with material evidence.

Consistent with the foregoing, the Court will grant the moving Defendants' motion (Doc. 73) and enter judgment in their favor.  The Court will also dismiss the action against the John Doe individuals pursuant to Federal Rule of Civil Procedure 4(m).  A separate Order shall issue.

_____
Robert D. Mariani
United States District Judge

Dated: November 25, 2024